IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATEVILLE DIVISION
5:19 CV 120 MOC WCM

| | | |
|---|---|---|
| CHRISTOPHER G. MILLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM AND |
| v. | ) | RECOMMENDATION |
| | ) | |
| ANDREW M. SAUL, | ) | |
| Acting Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the Court on the parties' cross motions for summary judgment (Docs. 7 & 9). Following a review of the record, the parties' submissions, and relevant legal authority, the undersigned respectfully recommends that Plaintiff's motion for summary judgment be denied and the Commissioner's motion for summary judgment be granted.

I. **Procedural Background**

On November 6, 2015, Plaintiff filed an application for disability insurance benefits asserting a disability onset date of December 1, 2013. Transcript of Administrative Record ("AR") pp. 237-38. Following denial of Plaintiff's claims on initial review and reconsideration, hearings were held on March 7, 2018 and July 6, 2018, where Plaintiff appeared and testified. AR pp. 30-54 & 55-99. Plaintiff was represented by counsel at both hearings.

1

On August 30, 2018, the Administrative Law Judge ("ALJ") issued an unfavorable decision. AR pp. 12-29. The Appeals Council denied Plaintiff's request for review of that decision on July 18, 2019 and Plaintiff timely filed the instant action. AR pp. 1-6; Doc. 1. Accordingly, the ALJ's decision is the Commissioner's final decision for purposes of judicial review. See 20 C.F.R. § 404.981.

## II. The Five-Step Process

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1505; 416.905. The regulations require the Commissioner to evaluate each claim for benefits using a five-step sequential analysis. 20 C.F.R. §§ 404.1520; 416.920. In this process, the Commissioner considers each of the following: (1) whether the claimant has engaged in substantial gainful employment; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is sufficiently severe to meet or exceed the severity of one or more of the impairments listed in Appendix I of 20 C.F.R. Part 404, Subpart P; (4) whether the claimant can perform his or her past relevant work; and (5) whether the claimant is able to perform any other work considering his or her age, education, and residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520, 416.920; Mastro v. Apfel,

2

270 F.3d 171, 177 (4th Cir. 2001); <u>Johnson v. Barnhart</u>, 434 F.3d 650, 653 n.1 (4th Cir. 2005) (per curiam).

The burden rests on the claimant through the first four steps to prove disability. <u>Monroe v. Colvin</u>, 826 F.3d 176, 179 (4th Cir. 2016). If the claimant is successful at these steps, then the burden shifts to the Commissioner to prove at step five that the claimant can perform other work. <u>Mascio v. Colvin</u>, 780 F.3d 632, 635 (4th Cir. 2015); <u>Monroe</u>, 826 F.3d at 180.

## III. The ALJ's Decision

The ALJ determined that Plaintiff has the severe impairments of post-traumatic stress disorder, depression, type I diabetes mellitus, neuropathy, and retinopathy. AR p. 17.

The ALJ found that Plaintiff had the RFC to

> perform light work (lift and carry 20 pounds occasionally and 10 pounds frequently, as defined in 20 CFR 404.1567(b)) except that he is limited to simple routine repetitive tasks, unskilled work; no public interaction (meaning cannot have sustained and critical conversations); he can have occasional interaction with supervisors and coworkers, he should not be involved with any complex decision-making or crisis situations, there should not be constant changes in routine; he can stay on task for two hours at a time and throughout the work day; he should not climb ropes, ladders, or scaffolds; he can engage in frequent handling/fingering/feeling/reaching; he can engage in frequent pushing and pulling with feet; and he must avoid concentrated exposure to hazards.

> AR pp. 18-19.

3

Applying this RFC, the ALJ found that Plaintiff was unable to perform any past work, but that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as Mail Clerk, Office Helper and Label Coder, and therefore Plaintiff was not disabled since his alleged onset date (December 1, 2013) through the date of the ALJ's decision (August 30, 2018). AR pp. 23-24.

## IV. Standard of Review

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to two inquiries: (1) whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and (2) whether the Commissioner's final decision applies the proper legal standards. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006) (quoting Mastro, 270 F.3d at 176). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal quotation marks omitted). It is more than a scintilla but less than a preponderance of evidence. Id.

When a federal district court reviews the Commissioner's decision, it does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, the

issue before the Court is not whether Plaintiff is disabled but, rather, whether the Commissioner's decision that he is not disabled is supported by substantial evidence in the record and based on the correct application of the law. Id.

## V. Analysis

Plaintiff asserts two (2) challenges concerning the ALJ's RFC findings and also argues that the ALJ failed to identify and resolve apparent conflicts between the Vocational Expert's ("VE") testimony and the Dictionary of Occupational Titles ("DOT"). Pl.'s Mem. (Doc. 8) at 2.

### A. RFC Related Issues

RFC is defined as "the most [a claimant] can do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). SSR 96-8p, 1996 WL 374184 (July 2, 1996), provides that an ALJ's RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)." Id. at *7. The Commissioner is responsible for determining the claimant's RFC based on all the relevant evidence. Johnson, 434 F.3d at 653. However, in formulating an RFC, an ALJ is not required to discuss every piece of evidence. See Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014).

Here, the ALJ determined that Plaintiff had the physical RFC to perform light work and could engage in frequent handling, fingering, feeling, and

Case 5:19-cv-00120-MOC-WCM   Document 11   Filed 07/09/20   Page 5 of 15

reaching, as well as frequent pushing and pulling with feet, but that he should not climb ropes, ladders, or scaffolds. AR p. 19. With respect to his mental RFC, the ALJ determined that Plaintiff could perform unskilled work consisting of simple, routine, repetitive tasks with no public interaction (to the extent that it required sustained and critical conversations), no more than occasional interaction with supervisors and coworkers, and no complex decision making, crisis situations, or constant changes in routine. Id.

Plaintiff argues that the ALJ's RFC findings are deficient in two ways: (1) the ALJ failed to account for functional limitations stemming from his diabetes as well as his limitations in social interaction; ability to maintain concentration, persistence, or pace; and ability to adapt or manage himself; and (2) the ALJ failed to account for limitations resulting from Plaintiff's retinopathy.

### 1. Function by Function Assessments

Plaintiff argues that the ALJ failed to account for his "diabetes-related episodes of mental confusion, fatigue and weakness" and his ability to attend work consistently and sustain work throughout an entire workday and week. See Doc. 8, pp. 9 & 10-11. Additionally, Plaintiff asserts that the evidence "supports a conclusion that [he] had a marked to extreme limitation in social interaction, a marked limitation in the ability to maintain concentration, persistence or pace and a moderate to marked limitation in adapting or

6

managing oneself." Doc. 8, p. 11.

The ALJ did not conduct an independent function by function analysis in his August 30, 2018 Decision. However, "an ALJ may satisfy the function-by-function analysis requirement by referencing a properly conducted analysis of state agency consultants." Herren v. Colvin, 1:15-cv-2-MOC, 2015 WL 5725903, at * 5 (W.D.N.C. Sept. 30, 2015) (collecting cases); see also SSR 96-6p, 1996 WL 374180, at * 2 (July 2, 1996) (state agency consultants "are highly qualified…physicians and psychologists who are experts in the evaluation of medical issues in disability claims…."); Tanner v. Commissioner of Social Security, 602 Fed. Appx. 95, 101 (4th Cir. 2015) (unpubl.) (stating that "[a] 'non-examining physician's opinion cannot, by itself, serve as substantial evidence supporting a denial of disability benefits when it is contradicted by *all of the other evidence* in the record. However, 'the testimony of a nonexamining physician can be relied upon when it is consistent with the record.'")(quoting Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir.1986) (emphasis in Smith)).

With respect to Plaintiff's physical limitations, the State Agency non-examining medical evaluators opined that Plaintiff had the RFC to perform medium work with sitting, standing, and walking six hours each in an 8-hour workday. AR p. 125-29. The ALJ assigned this opinion only "some weight" because it did not account for Plaintiff's complaints regarding neuropathy and

7

therefore the ALJ "further limited [Plaintiff] to light work with some other postural and manipulative limitations." AR p. 22. The ALJ explained that, though Plaintiff complained of greater physical limitations, he did not further limit Plaintiff's physical RFC because the record "generally shows that his diabetes has been stable with conservative treatment and that he has been able to maintain an exercise regimen despite it." Id.

These conclusions were supported by substantial evidence. For example, the ALJ noted that medical records from June 2014 showed Plaintiff's A1c to be "only slightly above goal of less than 7%." AR p. 20 (discussing AR p. 500); see also AR p. 21 (ALJ stating that Plaintiff's A1c has not fluctuated much since the alleged onset date and was generally in the 7.0 to 7.5 range and that in May 2018 Plaintiff reported "no hypoglycemia."). Additionally, the ALJ noted that in June 2014, Plaintiff reported that he was engaging in aerobic activity at least 5 days a week and reported in May 2018 that he was able to exercise regularly. AR pp. 20 & 21 (discussing AR pp. 498 & 596).

With regard to Plaintiff's mental limitations, State Agency evaluator Dr. Margaret Barham opined that Plaintiff retained the capacity to "understand and remember simple instructions;" concentrate, persist, and maintain pace "for simple instructions in low production work settings," have "routine interactions with coworkers and supervisors in settings with limited interpersonal demands;" and "cope with routine changes and safety issues in

8

low stress work settings." AR pp. 126-128.[1] The ALJ explained that he assigned "substantial weight" to the state agency mental findings because they were "consistent with the new evidence received at the hearing level." AR p. 22. The ALJ discussed Plaintiff's longitudinal treatment history at some length and found that Plaintiff's mental disorders did "not significantly interfere with his ability to work" and that Plaintiff's mental status exams showed "he was generally stable on medications." AR pp. 21-22.

The ALJ's conclusion regarding Plaintiff's mental RFC is also supported by substantial evidence. Though Plaintiff stopped working at the end of 2013, the ALJ correctly noted that Plaintiff did not seek mental health treatment until early 2015. AR pp. 371-375. Further, the ALJ cited Plaintiff's medical records reflecting that Plaintiff reported in September 2015 that his hypervigilance and paranoia had improved, and that by November 2015, his mood had improved and he was experiencing fewer anger outbursts. AR p. 21 (discussing AR pp. 533 & 544). The ALJ additionally noted that Plaintiff reported that his sleep had improved and that his mood was stable in April 2016, and that in May 2018, he "had noticed a significant improvement in

---

[1] Similarly, State Agency evaluator Dr. Sharon Skoll opined on initial review that Plaintiff was able to "understand and remember simple instructions," "sustain concentration, persistence and pace for simple tasks," "interact appropriately with others in settings with limited interpersonal demands," and "adapt to routine/simple changes in low stress work settings." AR pp. 109-111.

9

depression since starting Lamictal." AR p. 22 (citing AR pp. 590 & 596).

## 2. Limitation Regarding Plaintiff's Retinopathy

The ALJ concluded that Plaintiff's retinopathy was a severe medically determinable impairment at Step 2 of the Sequential Evaluation Process. However, Plaintiff argues that the ALJ failed to account properly for the limiting effects of his retinopathy in the RFC or provide an explanation why he did not assign restrictions for this impairment.

In his Decision, the ALJ stated that Plaintiff had "not followed up for diabetic retinopathy since 2015, at which time his vision was 20/20 on the right and 20/20 -1 on the left." AR p. 21. Though records indicate that Plaintiff's uncorrected vision in June 2015 was 20/20 on the right and 20/20 -1 on the left, his records from November 2015 indicated that his uncorrected vision was 20/25 in both eyes. AR pp. 454, 457. However, when the ALJ inquired of Plaintiff at his hearing on March 7, 2018 whether he required glasses or corrective lenses, Plaintiff responded in the negative. See AR p. 82 ("So far my eyes are okay. I get them checked once a year or maybe twice a year, I can't remember.").

Accordingly, the ALJ established a logical bridge from the evidence of record to Plaintiff's RFC, and the undersigned does not recommend remand on this basis.

## B. Conflict Between VE's Testimony and DOT

The DOT and its companion publication, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* ("SCO") "are Social Security Administration resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations." Pearson v. Colvin, 810 F.3d 204, 205, n. 1 (4th Cir. 2015). Accordingly, "an ALJ must ensure that any 'apparent' conflicts between [these sources] and the VE's testimony are reasonably resolved." Thomas v. Berryhill, 916 F.3d 307, 313 (4th Cir. 2019).

Here, the VE identified the representative occupations of Office Helper, Mail Clerk, and Label Coder. Plaintiff contends that apparent conflicts exist between the VE's testimony and the DOT's description of these occupations, and that the ALJ erred by failing to ask the VE to identify these conflicts or explain why she was not asked to do so.

### 1. Office Helper

Plaintiff contends that the occupation of Office Helper is inconsistent with Plaintiff's RFC. Plaintiff points out that this position is described by the SCO as requiring occasional talking, which includes "expressing or exchanging ideas by means of the spoken word to impart oral information to clients or to the public and to convey detailed spoke (sic) instructions to other works (sic) accurately, loudly or quickly." Pl.'s Mem. (Doc. 8), p.18 (citing Appendix C, SCO

11

at C-4). The undersigned does not agree that this requirement is in conflict with Plaintiff's RFC. The ALJ limited Plaintiff to having only "occasional interaction with supervisors and coworkers" and "no public interaction (meaning [Plaintiff] cannot have sustained and critical conversations)." AR p. 19. The DOT indicates that an Office Helper engages in "Speaking-Signaling," which is defined as "[t]alking with and/or signaling people to convey information. Includes giving assignments and/or directions to helpers or assistants." Appendix B - Explanation of Data, People, and Things, 1991 WL 688701. However, the "Speaking-[s]ignaling" requirement is listed as "not significant," DICOT 239.567-010, 1991 WL 672232, and there is no indication that this occupation requires sustained and critical conversations with the public or more than occasional interaction with supervisors and coworkers. Accordingly, no apparent conflict exists between the VE's testimony and the DOT's description of Office Helper.

### 2. Mail Clerk

Plaintiff asserts that the Reasoning Level of 3 required for this occupation conflicts with the limitation in Plaintiff's RFC to "simple, routine, repetitive tasks" and no "complex decision-making." Pl.'s Mem. (Doc. 8), p. 19 (citing AR p. 19).

In order to perform a job requiring Reasoning Level of 3, an individual must have the ability to "[a]pply commonsense understanding to carry out

instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." 209.687-026 DICOT 1991 WL 671813.

However, "[c]ourts have … held that a GED reasoning level of 3 does not preclude the performance of [simple, routine, and repetitive tasks]." Doll v. Saul, 1:19-cv-85-MOC, 2019 WL 5866156, at * 4 (W.D.N.C. Nov. 8, 2019) (collecting cases).

Further, even if an apparent conflict existed between a job requiring a Reasoning Level of 3 and Plaintiff's RFC limitation to "simple, routine, repetitive tasks" and no "complex decision-making," the ALJ's failure to resolve such a conflict in this case would not require remand, as the VE also identified at least one job that Plaintiff could perform and for which an apparent conflict did not exist. As discussed above, the occupation of Office Helper, which requires a Reasoning Level of 2, does not conflict with Plaintiff's RFC limitations. 239.567-010 DICOT 1991 WL 672232.

### 3. Label Coder

Plaintiff argues that the requirement of climbing for this occupation is inconsistent with Plaintiff's RFC. The undersigned agrees. Plaintiff's RFC indicates that "he should not climb ropes, ladders, or scaffolds," AR p. 19, while the DOT indicates that a Label Coder must engage in climbing "[o]cassionally – [e]xists up to 1/3 of the time." DICOT 920.587-014 (G.P.O.), 1991 WL 687915.

The VE was not asked about this discrepancy, and no explanation was offered for the omission.

However, as noted above, the ALJ's failure to resolve this conflict is harmless error. As Plaintiff "can perform at least one job that exists in significant numbers in the national economy, the ALJ properly concluded that Plaintiff is not disabled under the Act."[2] <u>Richardson v. Berryhill</u>, No. 5:17-CV-00173-RJC-DSC, 2019 WL 1354042, at *4 (W.D.N.C. Mar. 26, 2019)(citing, <u>Guiton v. Colvin</u>, 546 F. App'x 137, 142 (4th Cir. 2013); <u>see also</u>, <u>Bavaro v. Astrue</u>, 413 F. App'x 382, 384 (2d Cir. 2011)) (finding that the Commissioner need show only one job to meet her burden at Step Five).

Accordingly, the undersigned does not recommend remand on this basis.

## VI.    Recommendation

Considering the foregoing, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (Doc. 7) be denied and that the Commissioner's Motion for Summary Judgment (Doc. 9) be granted.

Signed: July 9, 2020

W. Carleton Metcalf
United States Magistrate Judge

---

[2] The VE testified that there are 35,700 positions for Office Helper in the national economy.

14

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636(b)(1)(C), and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).